Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Welch presiding along with Justice Overstreet and Justice Bowie. The first case this morning is number 517-0404, People v. Miller. Arguing for the appellant, Craig Miller, is Elizabeth Proddy. Arguing for the appellee, People of the State of Illinois, is Sharon Shanahan. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I will bang the gavel. Finally, please remember no photographs and only the clerk of the court is permitted to record these proceedings today. Counsel, whether appellant, ready to proceed? Thank you, Your Honor. May it please the court, counsel, and to the family watching at home. My name is Elizabeth Proddy and I represent Craig Miller in this matter. Subject to this court's questions, I will focus my arguments today on the two reasons why this court should reverse and remand for a new trial. First, Craig's statements were involuntary and obtained without a knowing, intelligent, and voluntary waiver of his Miranda rights. That reason alone requires reversal. Second, Craig did not receive effective assistance of counsel as required by the Constitution. Turning to the first issue, this interrogation is inherently coercive and that itself is the reason for the Miranda procedures. In this case, you add to that that Craig had just turned 17. He was exhausted from a stressful day. He spent the day working outside and then was the intended victim of a drive-by shooting at his house that almost killed his mother figure. And the interrogation didn't take place until about 9 p.m. that evening. He did not have prior history with the criminal justice system and then the police deliberately isolated him from his family, including his cousin, Brittany Miller, who showed up to assist him and assert his rights for him. The police minimized the seriousness of the incident. And then they threatened that he had to tell them exactly what happened or they would tell the prosecutor that he had acted with cold blood and that he had shot Garrett for absolutely no reason. Now, the best evidence in this case is the videotapes themselves. Certainly at the You can witness the emotional breakdown. He is at points crying, covering his face with his t-shirt, getting up and standing in the corner. And then we have a situation where in the initial hearing on this matter, the court only viewed the first 9 and 10 minutes of the videotape before deciding that this was just a reasonable exchange between individuals. Based partially on on acted as if the admonishments by both the court, the statute and the case law regarding concerned adults don't apply to Craig because he's 17. But that's inaccurate. And based on all of these matters, we don't have an affirmative waiver. We don't have a situation where the record shows of knowing intelligent and voluntary waiver of Craig's rights. And we see his will being broken through the course of nature of this custodial interrogation. And for those reasons alone, he asked that this court reverse and remand for a new trial. Now, additionally, both in the litigation for regarding Craig's statements, and throughout the pre trial and trial proceedings, counsel did not rise to the level of constitutionally effective assistance of counsel. The very at the very heart of an attorney's role is to know the law applicable to a case, and to know or discover the facts, including what evidence can and cannot be admitted to trial. Now, an attorney has to choose and choose a defense based on the law and the facts, and to protect their client from improper evidence and argument. And counsel in this case, failed at each step. And again, in the statements, in the litigation of the statements, counsel cited overruled case law, did not cite case law on point that would have helped his arguments, and then chose a defense of second degree murder based on imperfect self defense, under a mistaken impression of the requirements of that defense, and a mistaken impression of what evidence would be available to help present that defense to the jury. Now, in particular, a notable example is that counsel wanted to admit evidence to show that Garrett had a violent nature, and that he had been involved in the in the shooting regarding the shooting at Craig's house earlier that day. And but during jury selection in that trial, counsel was unaware that two witnesses he intended to rely on, and would not be available and we're not present. In particular, Donnie Shirell, and Jared Harad. Shirell was in federal custody, the state had decided not to call him, so he was out of state. Jared Harad, the state also decided not to call him and there was some information that he might not have been competent to testify. But counsel had chosen a defense and intended to elicit evidence through these witnesses, either on cross examination or by recalling them, but was unaware that they would not be available at trial, and didn't take the basic measures to secure those witnesses presence. There was also as noted other points that counsel did not utilize at trial. Council also made centerpiece of the defense, both Craig's youth and the and the issues within the Brooklyn Police Department. But based on errors, counsel was also left relying solely on Craig's testimony, rather than available support based on evidence. Counsel also allowed the state to present evidence that was improper without objection and to argue extensively and opening and closing matters that were incorrect and highly inflammatory. Now, based on the chosen defense, the jury should not have heard extensive evidence and testimony from Brooklyn Police that yes, they had gotten the person responsible. No, no one believed that Garrett was involved in this incident. And yet, this is hearsay, there's no, not only does it improper evidence, it was also irrelevant, based on the issues at trial. And most notably, you have a situation where counsel did not properly presented, there would have been a reasonable basis to convict Craig of a lesser, the lesser mitigated offense of second degree murder, either based on self defense, or based on provocation. And yet, we have a situation where counsel did not properly present that argument, and instead allowed the state to argue such improper inflammatory things such as that Craig stood over Garrett shooting him at point blank, while he was begging for his life. Now, there is no testimony or evidence that supported that, that statement. And yet, it bolsters the situation where the state in this case presented a false dichotomy of Garrett as an innocent 16 year old against cold blooded, heinous Craig Miller from Brooklyn, when in fact, the situation is definitely tragic, but it's a situation of children making terrible mistakes. It is not good versus evil, it is a horrible mistake that happened in this case. And Craig Miller should have been protected by counsel and was not due to errors of fact and law. And for those reasons, in addition to the improper admission of Craig statements, he asked that this case be re-examined. And I think that's what's missing. Certainly, throughout the each of these arguments, at the heart of them is Craig's youth, his traumatic background, and the nature of the offense here, which was anything but cold blooded. This happened in the heat of the prison, particularly for a 17 year old, who's shown promise of rehabilitation. Now, for these reasons, again, this court should reverse and remand for a new trial, or alternatively, Craig respectfully requests that this court reduce the sentence and remand for a new sentencing hearing. Thank you, Councilor Apley. May it please the court, counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. With the court's permission, I would like to focus on the video of him running through the parking lot, repeatedly shooting the victim, the video of his flight after the victim, and his own testimony that makes any... Although, as argued in the state's brief, we do not believe that there was ineffective assistance of counsel, but nonetheless, there certainly was no prejudice to the defendant. So I think, and then I would like to say, very briefly on the sentencing issue. People versus Buffer made it absolutely clear that a 40 year sentence is not a de facto life sentence. That's what the defendant got. His argument that the MSR should be added on has been rejected. The one, six cases that counsel filed a motion to cite additional authority on last Friday, none of them have anything to do with this case because they all range, they are all de facto life sentences. 66 years, 75 years, 50 years, 45 years, 78 years, and 53 years. They have nothing to do with a 40 year case. So I think Buffer completely resolves the sentencing issue. And I think the question, the important question that's before this court is the confession and, in particular, the Miranda rights given to the defendant. Now, there is, the first question is, is whether the Juvenile Court Act applies. And the defendant argues that it does, but you can't get language much clearer than, and here I'm reading directly from the statute, the definition of delinquent minor shall not apply to any minor who, at the time of the offense, was at least 16 years of age and who is charged with first degree murder. Well, we have a 17 year old charged with first degree murder. Therefore, the Juvenile Court Act does not apply. The statute goes on to say, the procedures set out in this article for the investigation, arrest, and prosecution of juvenile offenders shall not apply to murder, to minors who are excluded from the jurisdiction of the Juvenile Court Act. Counsel, Counsel, hasn't the statute been amended? It has. Um, not that part, but, but the, I assume you are referring to the Miranda rights for juveniles? Yes. Okay. I would like to address that. And that is the question, and I think it's a really involved and interesting question as to whether these new Miranda rights apply to this defendant. The new Miranda rights, I have read them and read them and read them and tried to make them make sense, and I really think there's a word missing from them, but nonetheless, there is a new, new amended statute that states that that the officer shall continuously read to the minor in its entirety and without stopping for purposes of a response from the minor or verifying comprehension, the following statement. You have the right to remain silent. This means you do not have to say anything. Anything you do say can be used against you in court. You have the right to get help from a lawyer. If you cannot pay for a lawyer, the court will get you one for free. You can ask for a lawyer at any time. You have a right to stop this interview at any time. You read that straight through. You don't get the chance. You don't say, do you understand? That's what the statute said. So the question is, is does that amended statute apply when that amended statute took effect three years after this defendant was interviewed? And so the question is, does it apply retroactively? And that gets, I think, involves some deep reflection and research on retroactivity. I do not dispute that that this is a procedural change. I mean, it definitely is. It is a procedural change. It only modified how Miranda is read to minors. So superficially, there's a conclusion that the statute is retroactive, but I think there's two really important pieces of language, one from the statute on statutes and one from the United States Supreme Court, which warrant a different conclusion. The section four of the statute on statutes says that proceedings thereafter shall conform, and here's the important language, so far as practicable to the laws enforced at the time of such proceeding. Now the modified Miranda warnings were enacted into law on January 1, 2017, and the defendant was interviewed on July 11, 2014. It was not practicable to apply these modified warnings three years before they were written. It's impossible. When you go to people, X. Alvarez versus Howard, the Howard court rejected an argument that practical was not synonymous with convenient, and I would agree with that, but in Howard, they were wanting to transfer a defendant from adult court to juvenile court. He hadn't yet been tried. They just wanted to take him back to juvenile court, and the Howard court said, clearly transferring this case to juvenile court for a transfer hearing is something that is feasible. And so it's easy to jump to the conclusion that Howard's would apply in this case, but in Howard, moving the defendant from adult court to juvenile court was disruptive, but it could be done. It was inconvenient, but it was not impracticable. Okay, so couldn't the, I mean, the police, obviously three years later, they didn't have the exact language from the statute, so that was not practical, but don't you think that substantial compliance with the, at least the concepts of what the language from the amended statute, don't you think that is something that should be required in this case? I'm not sure I understand your question. Are you saying that the police should, I mean, it sounds to me like you're saying the police should have anticipated what the statute was going to be amended to and tried to comply with it, that they should have given. Because this is basically the difference in the statute is that it's read all at once, with no interruptions and and that you tell the defendant that they don't have to talk to you. That's, I don't know how three years in advance. I mean, we've had Miranda since 1960 something. I don't know how the police officers could anticipate a change in Miranda that would occur, three years later, and there is certainly no way to go back and start all over again to say, okay, we're going to give you the new Miranda and then talk to you. It's just impossible. I would like to As further support, point out the footnote in Landgraf from the United States Supreme Court, footnote 29, in which the Supreme Court said, The mere fact that a new rule is procedural does not mean that it applies to every pending case. A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime. And the promulgation of a new rule of evidence would not require an appellate court remand for a new trial. Our orders approving amendments to federal rules reflect the common sense notion that the applicability of such provisions ordinarily depends on the posture of the particular case. Now a common sense notion of the applicability of the amendment to the juvenile Miranda leads to the conclusion that three years before it was amended, it was not logical or possible to use this unwritten language, this unwritten, this unchanged way of giving juveniles Miranda, which may or may not be better for the for the juveniles, given the fact that they're not even allowed to answer whether they understand or not. But it's simply common sense that the police cannot go back in time and give defendant a modified Miranda warning. Counsel, your time is up. It is expired. Rebuttal. You're on. Counsel, you're on mute. I'm sorry, my apologies. First, just briefly about the Juvenile Court Act and in regards to concerned adult or the procedures to be followed. Counsel has still yet to address case law cited in both the opening and reply brief that supports our interpretation of the applicability of the statute. Now, turning to the Miranda rights question and The issue is not police conduct. And yes, that's an important factor. Police conduct in this case is an important factor. But what is at issue is Craig's understanding of his rights and whether he was able to, and in fact did knowingly intelligently and voluntarily waive them. And the statute does talk about police conduct, but the issue is the presumption and the proceeding in question is not just the interrogation. In fact, it is the motion on the hearing the hearing on the motion and so We're not asking. No one has suggested that we should that we have to have a time machine to Have a remedy. In this case, the remedy is to apply the facts of life that our legislature has codified in this statute that tells us kids don't understand Miranda. In the old way of doing things. And so we need to take extra special care with children to make sure that they have a clear understanding of their rights and they're asked these two important questions. Do you want to talk to me. And do you want a lawyer. And if we don't have that kind of clear admonishment to a child, then we can't assume that whatever procedure was used resulted in a knowing intelligent and voluntary waiver. And particularly considering Craig state of mind in this case and the police aggressive questioning and We cannot and should not presume that him signing a paper that said nothing about waiver him answering questions that did not talk about waving rights. Him having watched some police procedurals on TV means that he really understood what his rights were and the consequences of waving those rights. When our legislature has said that most kids do not. So that is the issue. It's not the issue of asking the police to bend over backwards to have some sort of new interrogation, it is Did Craig receive his constitutional rights in this case, did he make a knowing intelligent and voluntary waiver in this case. And as the video and the facts of record show The state did not prove that below Now, Just briefly, and the state has indicated that really the only first only issue that matters. Here's the first issue and that is incorrect. Craig doesn't have to prove that he would have been acquitted. He doesn't have to prove that He was Completely innocent in this case and he hasn't he hasn't disputed that he was the shooter and but being But having close evidence on on the issue of whether or not Craig was the shooter are involved in this case. I'm having clear evidence on that issue does not mean that it's not a close case in respect to second degree murder. And had counsel done due diligence. Had he done proper investigation. Had he known what states witnesses would be available to call had he utilized evidence that would have been available to Support his defense had he understood the law before making those choices. This would have been a close case on second degree murder and That is the issue that comes together with both the first issue and the second issue Craig statements to police. Yes, they were prejudicial and damaging and but they don't make this case any less close and just briefly and Buffer is far from clear that 40 years on the line. Is or is not de facto life and we have subsequent appellate case law going both ways. Ruiz and gun, I believe, and But even if this is not a de facto life sentence. We have something at the very line of a de facto life sentence. You have a 17 year old serving 40 years that's more than twice his lifetime. In prison for something that happened within 30 minutes of him being shot at in his home and his mother almost being killed. That is not justice and that is not a sentence that takes into mind the characteristics of youth and The characteristics of you in the mitigating circumstances in this case. And what we know about sentencing with a mind towards rehabilitation. And so for those reasons we asked this court to reverse or alternatively to reduce and remand or remand for resentencing. Thank you. Thank you. Council case will be taken under advisement and an order in due course, your excuse real quickly procedurally just as well. Mission hand if I if we understand correctly, you do not intend on filing any type of reply to councils. Request to cite additional authority. If I could give you about 30 seconds. I can answer that. Okay. The cases that that are in the motion to cite additional sort authority areas in which the defendant received 66 years figure off in which the defendant received 75 years Jackson. In which the defendant received 50 years Gregory in which the defendant received 45 years NATO which in which the defendant received 78 years and Perez and what the defendant received 53 years. These are all so far over the 40 year buffer line that that they Are an exercise in futility, they, they mean nothing. So that that's my response to all those cases is is what those have to do with 40 years The court in this case very carefully considered the defendants youth and and came up with a sentence that is not Does not is not a de facto life sentence. And that would be my response to that motion. Thank you. You're excused and we'll take the case under advisement. Thank you. Thank you.